Filed 5/26/16  P. v. Shorty CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B264622 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. YA090610) |
| v. | |
| AERICK WAYNE SHORTY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark S. Arnold, Judge.  Affirmed.

Cynthia Grimm, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

Following a jury trial, defendant and appellant, Aerick Wayne Shorty, was found guilty of second degree robbery (count 1) and assault with a firearm (count 2), with prior serious felony conviction, prior prison term, and firearm use enhancements. He was sentenced to a state prison term of 25 years. We affirm.

## FACTUAL SUMMARY

Viewed in accordance with the usual rules of appellate review (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206), the evidence established the following.

1. *Trial evidence.*

On May 29, 2014, Wendell Muhammad had parked his Suburban truck along the curb on 108th Street in Los Angeles. He was sitting in the driver's seat with his eyes closed when defendant Shorty and his accomplice, a woman named Aminah Thomas, approached the passenger side of Muhammad's truck. While standing at the open window of the passenger door of Muhammad's truck, Shorty leaned into the truck with a gun in his hand. He told Muhammad to give him everything he had or he would be shot. Thomas, who was standing a few feet behind Shorty, told Muhammad, " 'Do what he says,' " and " 'He's not playing. Just give him your stuff, come on, come on.' "

Muhammad tossed Shorty his wallet, although the wallet did not contain any money. Shorty grabbed Muhammad's work iPhone from the dashboard and then asked Muhammad to open the center console. When Muhammad opened the console, Shorty noticed a white envelope inside the console and told Muhammad to give it to him. Muhammad handed Shorty the envelope, which contained the cash from Muhammad's pay check, about $1,700 to $1,800. Shorty also told Muhammad to give him the watch Muhammad was wearing. Muhammad threw the watch on the passenger seat and Shorty grabbed it. Shorty and Thomas then began running down 108th Street.

Muhammad followed them in his Suburban and saw them get into a Volkswagen Jetta and drive off. Muhammad had another cell phone with him, so he called 9-1-1. He ended up talking to 9-1-1 while he was pursuing the Jetta. After the Jetta crashed in an alley, Shorty and Thomas began running toward Century Boulevard. Muhammad followed them in his Suburban, still on the phone with the 9-1-1 operator, when he saw

2

Shorty take the gun from his waistband and point it at him. Thinking he was about to get shot, Muhammad swerved and crashed into another vehicle, causing him to lose sight of the robbers.

Meanwhile, Los Angeles County Deputy Sheriff Miguel Jimenez had responded to the scene of the crashed Jetta. There were no occupants in the car; its doors and trunk were open. Jimenez searched the car and found a man's wallet on the passenger side floorboard. Inside the wallet was Shorty's identification card. Jimenez also saw a woman's purse or wallet, but he didn't search it. Another deputy subsequently showed the identification card to Muhammad, who said that was the guy who robbed him. Los Angeles County Deputy Sheriff Ryan Walker testified he found Muhammad's stolen iPhone inside the Jetta's center console. Muhammad's cash and wrist watch were never recovered, and Shorty's gun was never found.

It turned out that the Jetta belonged to Thomas's mother. She testified Thomas had had permission to drive it that day, and that she knew Thomas was in a relationship with a man named Aerick. She had met him before and identified him in court as defendant Shorty.

2. *Trial outcome.*

The jury convicted Shorty of second degree robbery (count 1) and assault with a firearm (count 2), and found true various firearm use enhancements.[1] (Pen. Code, §§ 211, 245, subd. (a)(2), 12022.5, 12022.53.)[2] In a bifurcated proceeding, the trial court found true a prior serious felony conviction and a prior prison term allegation. (§§ 667, subds. (a)-(i), 667.5.) The trial court sentenced Shorty on count 1 to the upper five-year term for robbery, doubled to 10 years as a second strike, plus 10 years for the firearm use enhancement (§ 12022.53, subd. (b)) and another five years for the section 667,

---

**1** Thomas, who had been charged as a codefendant, pled guilty prior to Shorty's jury trial.

**2** All further statutory references are to the Penal Code unless otherwise specified.

3

subdivision (a)(1), prior serious felony conviction, for a total prison term of 25 years. The trial court also imposed a 10-year term on count 2 (consisting of a doubled middle term for the assault conviction, plus four years for the firearm use enhancement), but stayed the entire term on count 2 pursuant to section 654's prohibition against multiple punishment.

We appointed counsel to represent Shorty on appeal. After reviewing the record, counsel filed an opening brief requesting this court to independently review the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436, 441. Shorty has filed a supplemental opening brief.

## DISCUSSION

We have examined the entire record and are satisfied appellate counsel has fully complied with her responsibilities and that no arguable appellate issues exist. (*Smith v. Robbins* (2000) 528 U.S. 259, 278 [120 S.Ct. 746]; *People v. Wende*, *supra*, 25 Cal.3d at p. 443.)

In his supplemental brief, Shorty makes numerous claims of trial error, all of which are more properly raised by way of habeas corpus petition with adequate supporting documents. "It is axiomatic that it is the burden of the appellant to provide an adequate record to permit review of a claimed error, and failure to do so may be deemed a waiver of the issue on appeal." (*People v. Akins* (2005) 128 Cal.App.4th 1376, 1385.) Moreover, many of Shorty's claims appear to be directly contradicted by the record on appeal.

Shorty alleges he was subjected to ineffective assistance of counsel for a variety of reasons that are either vague or are unsupported by any documents in the record on appeal. He asserts defense counsel had a conflict of interest without specifying the nature of that conflict. He asserts defense counsel refused to investigate his alibi, without either saying what that alibi was or documenting that he ever informed counsel of this alleged alibi. He complains that counsel failed to file unspecified motions and declined to ask witnesses unspecified questions. We note the record demonstrates that defense counsel made evidentiary objections during the presentation of prosecution testimony, and that

4

some of those objections were sustained and others were overruled. Shorty complains, without documentary support, that defense counsel tried to convince him to take an offered plea bargain of 19 years; we note that ultimately Shorty was sentenced to 25 years. He asserts the jury was picked "without my permission" and contained no African Americans. The latter assertion, as stated, is not a constitutional violation and we note the record states that – right before the defense accepted the jury panel – "defense counsel and the defendant conferred." (See *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 266–267 [ineffective assistance of counsel claims are generally properly decided in a habeas corpus proceeding rather than on appeal].)

Shorty contends Muhammad lied at trial and refers to the fact that Muhammad told "a complete different varsion [*sic*]"of events at the preliminary hearing. However, Muhammad's trial version was not "completely different." Rather, the only detail he changed was that at trial he testified Shorty had a gun, whereas at the preliminary hearing Muhammad testified he could not recall if Shorty had a gun, despite the fact the prosecutor asked him: "Do you remember telling me and Deputy Walker [this morning] that the male had a gun in his hands?" The record reveals that Muhammad was purposely vague at the preliminary hearing about having seen a gun because he felt the possible sentences for armed robbery were too harsh. Muhammad only agreed to testify at trial after he was granted immunity from any possible perjury charge.[3]

---

[3] Moreover, the record shows that defense counsel vigorously attacked Muhammad for this change of testimony. For example: "Q. You did not lie? [¶] A. I did not lie. I didn't tell the full truth. It's not a lie. I wasn't clear with everything. [¶] Q. Well, just so we understand the difference between truth and a lie. If you remember something, if you know something and remember something and then you say 'I don't remember,' on the stand, that's a lie, isn't it? [¶] A. Like I said, I was being vague, very vague. [¶] Q. You may have been vague, but when you say something that is exactly the opposite of the truth, isn't that a lie? [¶] A. Okay. Yes."

Shorty claims that trial counsel never conferred with him about the case, and that the trial court "would not let me fire [counsel] or grant my right to be represented by a private license attorney or State Bar Association lawyer." However, the record shows that Shorty was represented at trial by a member of the Indigent Criminal Defense Appointments panel, and that Shorty apparently never made a motion under *People v. Marsden* (1970) 2 Cal.3d 118, seeking substitution for his appointed counsel. Shorty claims he "was denied co-counsel . . . to cross-examine" prosecution witnesses, but the record contains no evidence Shorty ever requested co-counsel.

Shorty claims there was police misconduct because an officer showed Shorty's picture identification to Muhammad, never had Muhammad view a six-pack photo array, never investigated any other suspect, and never found the alleged gun. However, single-person showups are not inherently unfair (*People v. Ochoa* (1998) 19 Cal.4th 353, 413; *People v. Hunt* (1977) 19 Cal.3d 888, 893) and there is no indication the defense ever requested a pretrial lineup, which may not have been warranted in this case in any event. (See *Evans v. Superior Court* (1974) 11 Cal.3d 617, 625 ["The right to a lineup arises, however, only when eyewitness identification is shown to be a material issue and there exists a reasonable likelihood of a mistaken identification which a lineup would tend to resolve."].) The police are not required to investigate the possibility that other suspects may exist. (*People v. Hogan* (1982) 31 Cal.3d 815, 851, disapproved on other grounds in *People v. Cooper* (1991) 53 Cal.3d 771, 836 ["The police cannot be expected to 'gather up everything which might eventually prove useful to the defense.' "].) Muhammad's testimony alone was sufficient to prove that Shorty used a gun in the robbery. (See, e.g., *People v. Cobb* (1955) 45 Cal.2d 158, 162 ["corpus delicti of attempted robbery was proved when eyewitnesses testified that two men entered the store and one of them brandished a gun and said, 'This is a stick-up!' "].) Here, Muhammad testified: "I didn't think it was a gun. I know it was a gun."

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.

We concur:



ALDRICH, J.




LAVIN, J.

7